Good morning everyone and welcome to the Ninth Circuit. We'll hear the case in the order of Medici. The first case is Gomez-Cepeda v. Bondi that is submitted on the briefs. The first case for our argument is Cruz-Coello v. Bondi. You may begin. Good morning to all. Randy Alexander appearing on behalf of petitioners. To start, I'd like to just briefly review the basic facts of the case. The case takes place in Tegucupa, Honduras. This case will turn on whether the family that I will discuss is legally defined as a particular social group. The family consists of Edgar, 43 at the relevant time, Nayeli, his daughter, 5 years old, Allison, 14. She was the daughter who was involved in the problem with the gang. Could I ask just a preliminary question? Yes. The I.A. refers to the father as a lead respondent and the other says derivative. Did the other petitioners, did they file their own paperwork, their own applications, or are they derivative of the father? They are derivative of the father. Okay, so we're looking at whether the lead respondent established a nexus between his past harm, severe future harm, and membership in a PSG, right, a particular social group. So could you focus on that? Well, just so justices are aware, Edgar, the father, is the lead respondent by virtue of being the oldest and the male in the family. But the gravamen of the case involves Allison, the 14-year-old. Well, that's the problem, I think, that we're trying to get at, because it ends the question about I think there's just the one application. That's what you answered in response to Judge Ikuda's question. Just this one application, one declaration. So we're looking at what the petitioner has alleged and whether he's got a nexus, and his PSG is the family. Is that right? Yes and no. The actual description of the PSG is the family of Allison Cruz. Right. That's the PSG. So his story has to be, as the lead respondent, any harm that he describes is on account of his membership in the family. So that's what we're looking at. Okay. Edgar's the father who found out that his daughter had been sexually assaulted by a member of the 18th Street transnational gang. El Travieso, also known as the mischievous one, at knife point raped Edgar's daughter in an alley. Okay. So the, are you referring to, what the IG said was fondled her under her? Under her underwear. Okay, that's what we're talking about, right?  Okay. Yes. So at some point the lead respondent went searching for his daughter, found her in the street. She was crying. El Travieso said, stay out of this. You don't have anything to do with this. And he showed the father his gun. And the father explained, I don't want any trouble. I just want my daughter. But it sounds like what he was told wasn't because he was the father. It was because he sought to intervene and protect the woman who was his daughter. But that suggests basically resistance to crime, not something that's a protected ground. Well, what happened next was that El Travieso informed lead respondent father that he owned the police and that reporting this to the police wouldn't help at all. That doesn't change the reason why El Travieso threatened him. I'm still looking for the link to a protected ground. Well, the link to the protected ground is that after the initial phase of the sexual assault, El Travieso then started calling the family.  In order to try to find the daughter, Allison. But the problem was he began a harassment of the family. In order to find the daughter. In order to find the daughter. But again, we're still missing a protected ground there. That's the fact that he has sexual interest in the daughter. Not that there's anything political, religious, social. It's all about his sexual demands and the family's desire to protect the daughter. But what makes that a protected ground? I think what makes that a protected ground is that the father, the mother, Dania, and the other sisters would not be involved in this conflict but for their status as a family. And they would not be involved if they hadn't tried to intervene to protect the daughter. But that's crime. That may be. That certainly is crime. But the family would not be involved in the crime but for their relationship as a family. It sounds like you're drawing a distinction between the initial threat which happened in the alley where the perpetrator of the sexual assault threatened the father. And I think that that happened after the father intervened. It seems to me you're drawing a distinction between that and the threats that came afterwards in retaliation for the reporting. Yes, I've seen it in two phases. The first phase was when the daughter was assaulted. Then the second phase was when, on a separate occasion, Dad goes looking for the daughter, sees her with El Travieso. We're saying different things. This got a little bollocks up, it seems to me, but you just have the one petitioner, right? And the threat to him was not a sexual assault. The harm to him was not a sexual assault. The harm to him was the death threat, if we want to call it that, after he intervened, right? And then there were other threats that he is complaining of. But that's his harm. He wasn't sexually assaulted. No, not directly. But my argument is that because as father or the lead of this family or this social group, he now, in this second phase of the relationship between the family and El Traviso, he's now involved and drawn into this. And just to be clear, he was threatened not because of his membership in the family, but because he attempted to intervene. Isn't that correct? That is absolutely correct. So if I can do it this way, sometimes, I agree with Judge Ikuda's point, sometimes there's a, let's just make up a hypothetical, you know, political coup or something, and there's concern and reason for concern that a rival is going to take out somebody's entire family. Maybe a relative had nothing to do with the political coup, but after the dust settles there's reason to conclude that an opponent's family is at risk. And that seems to be quite different than what you're talking about. That's what we're trying to get at. What's your strongest argument that the petitioner here, who's the father, was threatened because he was the father as opposed to because he intervened? Okay. The argument that this lead respondent is now drawn into the harm that initiated in the first phase, but as the lead person responsible for this group of people, he's now involved. And that, in my argument, implicates this notion of a protected, a particular social group, that is worthy of government protection. Do you want to save some time for rebuttal? Yes. You have a minute and 12 seconds. Ultimately, I think one of the other issues in the case, if we were to get to that, was whether or not the government was in a position to protect the family from the harm. And the immigration judge suggested that, well, the country of Honduras has created programs for women's issues. The problem is those protections relate to after-the-fact situations, not preventing. But Honduras is the number one country for destination child sex. With that, there's no government entity able to protect women on the front end of sexual assault, in spite of the government's creation of programs and places to help after the fact. Your time has expired. Thank you. Do we have time for one more minute? May it please the Court, Edward Durant on behalf of the United States. Before I start my argument, I just want to correct a couple things. I don't know if counsel's recitation of the facts, even though some of them aren't relevant to Nexus, are accurate. I just want to correct those. The record does not indicate that Allison was raped. I know that the- I didn't suggest she was sexually assaulted in the alley. She was grabbed, but rape is a stronger term. In addition, it doesn't look like the father went looking for her. It turns out three days later, the only time that the father had any interaction with El Travioso was in a grocery store, and it appears to be by chance, because when he took Allison away from this gangster, the guy didn't even know who he was, so it seemed to be a heeded sort of chance argument. Nothing to do with the father looking for the daughter, but that was just a correction of the facts, and they were just erroneous. But with respect to the case here, it turns out Nexus and substantial evidence supports the agency's decision that the petitioners or the father- Could you help me straighten out the decision for you? Because now you just use the word petitioners, and I understand that there's one petitioner, and I think opposing counsel indicated in response to Judge Acuda's question that's his understanding as well. Yes, Your Honor. I misspoke. The lead petitioner is the father, and the question is whether, I guess, he established a nexus between El Travioso's actions and a protected ground. And what this case is, this is Rodriguez-Zuniga, a similar case, where there was a lady and someone went up to, I guess it was an ATM, and said, if you don't give us your money, we're going to kill your child. What the bad people or the gangster there was doing was using the child as an instrumentality, and that's just the case here. What we have here is pure thuggery. This El Travioso wanted a sexual relationship with this girl. When he couldn't get it, when the father intervened, when the gangster didn't think he was going to get what he wanted, he blurted this threat. It's just an instrumentality. It has nothing to do with the family. Again, I'm really just interested in the decision for you first. Is it the government's position that we're looking at one petitioner and we're trying to figure out whether he had a correct nexus? Well, based on this case, if he's the lead petitioner, it would be his nexus, and then it would all flow from there. Okay, so that's helpful to me. We have this case. I don't know that it's going to matter today, but the government, I think, may be taking inconsistent positions, and either that or I'm misunderstanding. So let's just go to a hypothetical. Here we have one petitioner, and I think you've answered the question about nexus and what questions we should be asking for nexus. The nexus is based on what? If we have just a hypothetical scenario where there's one petitioner and writers, derivative beneficiaries, who have also filed their own applications, then how do we do it? I'm not familiar with that case. I'm not asking this is a hypothetical case. I'm just trying to figure out the government's position on the decision tree. If Allison had had her own separate application, then what would we do? I think you looked directly at her, too, but she didn't. It looks like she filed an application, but everything reverts back to the parents' declarations. So are you familiar with our recent decision in Corpaino-Romero v. Garland? I'm not familiar with that case, Joan. No problem. That's fine. Just in this case here. I'm not going to apply here, so it's not a worry. It's a question I've got. We'll work it out later in the week. That's good to know. But with this case here, what you have is the father, his lead petitioner. In this case, it's Rodriguez-Zuniga. In fact, it's even stronger for the government here because what we have here is a chance encounter between a very, very angry gang member and a father who's getting in the way of something he wants. If the gang member thought that hurting either someone's house, their family dog, anything that would get in the way of his goal, that's what he was doing. With respect to Kat, the agency relied solely on acquiescence. The immigration judge pointed out several things in the country report that shows that the Honduran government would not acquiesce to future torture. One was that they have a functioning police system. Two, they criminalize rape. And even if the victim doesn't report it, they have reporting centers for women. And it looks like in all the municipalities, over 250 of them, they have women's centers. They're to help women for all things, whether medical, emotional, or criminal. So while it's not perfect in Honduras, certainly the evidence would suggest that they are trying to do things and that they are trying to help. So it doesn't, as this petitioner indicated in his brief without any citation of the record, it does not indicate that Honduras would turn a blind eye. Was there any report to the police here? I'm sorry, ma'am? Was there any report to the police? No, no, ma'am. Your Honor, they declined a report to the police. That's what I recollect. So if the court doesn't have any further questions, I can conclude now. I don't have any further questions. Thank you. But just to conclude, substantial evidence supports the agency's decisions with respect to asylum, withholding of removal, and cat protection. Thank you very much. Okay, case is submitted.
judges: CLIFTON, IKUTA, CHRISTEN